IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASHBY & GEDDES, P.A. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 10-591-SLR |
| | ) |
| LEONARD J. BRANDT and | ) |
| BRANDT VENTURES, GP, | ) |
| | ) |
| Defendants. | ) |

Stephen E. Jenkins, Esquire and Catherine A Gaul, Esquire of Ashby & Geddes P.A., Wilmington, Delaware. Counsel for Plaintiff.

Kevin W. Gibson, Esquire of Gibson & Perkins LP, Wilmington, DE. Counsel for Defendants. Of Counsel: Gerald A. Klein, Esquire, of Klein and Wilson.

**MEMORANDUM OPINION**

Dated: August 1, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On May 21, 2010, plaintiff Ashby & Geddes, P.A. ("plaintiff") filed the present action against defendants Leonard J Brandt ("Brandt") and Brandt Ventures, GP (collectively "defendants"). (D.I. 1) Defendants removed the case to this court on July 12, 2010, pursuant to the court's diversity jurisdiction. (D.I. 1) Plaintiff alleges in its complaint that defendants failed to pay their legal fees stemming from a series of lawsuits over the control of CNS Response, Inc. ("CNS") that plaintiff was retained to litigate. (D.I. 18 at 1) In their answer to plaintiff's complaint, defendants assert three counterclaims: (1) breach of contract; (2) professional negligence;[1] and (3) breach of fiduciary duty. (D.I. 16 at 13-17) The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). Presently before the court is plaintiff's motion (D.I. 17) to dismiss defendants' counterclaims for failure to state a claim. For the reasons that follow, the court grants in part and denies in part plaintiff's motion.

## II. BACKGROUND

Brandt is a shareholder, director, and former officer of CNS. (D.I. 18 at 4) During a series of legal battles over the control of CNS, Brandt hired the Yocca Law Firm LLP ("Yocca") to represent his interests in California, and plaintiff to represent his interests in Delaware. (*Id.* at 4-5) Yocca was to formulate the strategy for the litigation, and plaintiff was to implement it in Delaware. (*Id.*) After a series of losses at the Court of Chancery, Brandt substituted The Williford Firm, LLC ("Williford") for Yocca and

---

[1] Defendants' professional negligence claim is a legal malpractice claim, and the court will use the terms interchangeably.

2

plaintiff. (*Id.* at 5) Williford represented Brandt before the Delaware Supreme Court, who rejected his appeal as having no merit. (*Id.*)

On May 21, 2010, plaintiff filed a complaint against defendants in Delaware Superior Court for the nonpayment of fees and the dishonor of a check. (*Id.* at 6) Defendants removed the case to this court, and attempted to dismiss the action pursuant to Federal Rules of Civil Procedure 12(b)(2), (3), (4), (5), and (7). (D.I. 1, 4) Defendants then answered, asserting various counterclaims that are largely duplicative of each other. (D.I. 16) First, defendants allege that plaintiff breached its Retention Agreement by failing to provide defendants with "'the most cost effective' legal services possible . . . at or above the standard of care of Delaware attorneys." (*Id.* at 13) Second, defendants allege that plaintiff was professionally negligent by failing to determine whether the proposed litigation would accomplish defendants' goals, and failing to advise defendants of said analysis. (*Id.* at 15) Finally, defendants contend that plaintiff breached the fiduciary duty that it owed to defendants by "failing to perform its services at or above the standard of care for competent Delaware attorneys practicing in the areas for which they were retained and by putting the interests of [itself] above the interests of [defendants]." (*Id.* at 16)

## III. STANDARD

In a diversity action, the court must first address the threshold issue of which law governs the rights and liabilities of the parties before it. For substantive issues, the court looks to the substantive law of the forum state in which it sits. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).[2] The forum state's choice of law doctrine is included

---

[2] Here the parties agree that Delaware law controls.

within its substantive law. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994).

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept the factual allegations of the non-moving party as true and draw all reasonable inferences in its favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A court may consider the pleadings, public record, orders, and attached exhibits. *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Furthermore, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

In its motion to dismiss, plaintiff argues that: (1) defendants' breach of contract claim is defective because it is redundant of defendants' professional negligence claim; (2) plaintiff is not liable for professional negligence because plaintiff is not the proximate cause of any damages defendants allegedly suffered; and (3) plaintiff did not owe defendants a fiduciary duty. (D.I. 36 at 5, 11, 19)

### A. Breach of Contract

"[A] client who sues his attorney for breach of contract 'must allege that an attorney breached a contract term or failed to follow a specific instruction of the client.'" *Edelstein v. Goldstein*, Civ. No. 09C-05-034, 2011 WL 721490, at *5 (Del. Super. Mar. 1, 2011) (citations omitted). However, "Delaware courts have recognized that, in the context of legal malpractice, a claimant cannot assert both negligence and breach of contract claims based on the same conduct because tort claims and breach of contract claims are not alternative theories of recovery for the same acts." *Id.* at *7.

Defendants argue that their breach of contract claim is different than their professional negligence claim because, for their professional negligence claim, defendants allege that "[they] were improperly advised as to the likelihood of success of [their] case and wasted money on legal fees pursuing a claim that should never [have] been filed." (D.I. 19 at 11) "As to the breach of contract claim, [defendants] specifically alleged [plaintiff breached its] promise to provide [defendants] with the most cost effective legal services possible. (*Id.*)

5

Defendants' breach of contract counterclaim is best described as the "kitchen sink" method of pleading. While the counterclaim does include a succinct paragraph alleging that, "[a]s part of the Retention Agreement with [defendants], [plaintiff] expressly agreed it would provide [defendants] with 'the most cost-effective' legal services possible in the matters where [plaintiff] provided legal services to [defendants]" (D.I. 16 at 13), it also includes the following, sprawling accusation:

> As an implied term of the Retention Agreement, [plaintiff] agreed it would: (1) provide services at or above the standard of care of Delaware attorneys practicing in the types of cases similar to those presented by [defendants]; (2) develop cost-effective and reasonable strategies to accomplish [defendants'] goals; **(3) properly advise [defendants] of [their] chances of success and competently advise [defendants] regarding the risks and rewards of litigation;** (4) perform all necessary research to understand the law and competently advise [defendants] regarding [their] options; (5) keep no secrets from [defendants] and be forthright in its communications with [defendants]; (6) provide [defendants] with a competent legal analysis of the issues [defendants] presented and develop a cost effective strategy to achieve [defendants'] goals, or advise [defendants] if [their] goals were unreasonable and would not likely be accomplished; (7) bill [defendants] fairly; (8) take on all responsibilities and obligations a reasonably competent Delaware lawyer would assume in that lawyer's representation of [defendants'] interest; and (9) would exercise the prudence, care, skill, diligence, and reasonable professional judgment to protect [defendants'] interests in the matters [plaintiff] was handling for [defendants].

(*Id.*)

Plaintiff allegedly breached said terms of the agreement in the following ways:

> (1) [plaintiff] did not properly analyze the claims at issue and, therefore, could not properly advise [defendants]; (2) [plaintiff] either did not understand the claims [defendants'] California attorneys were asserting or quietly allowed [defendants] to believe those claims had merit when [plaintiff] knew or should have known such claims did not have merit; (3) [plaintiff] failed to provide [defendants] with a proper legal analysis of the claims [plaintiff] and Yocca were asserting on [their] behalf and failed to advise [defendants as to] what [their] chances of success were in a timely

6

fashion; (4) [plaintiff] overcharged for its services, either by intentionally over billing or by performing its services in an inefficient way, leading to excessive charges; and (5) [plaintiff] failed to perform its services in accordance with the standard of care as required by its contract.

(*Id.* at 14)

The majority of defendants' breach of contract counterclaim is duplicative of its professional malpractice and breach of fiduciary duty claims. To the extent the claims are duplicative, the breach of contract claim is dismissed. That said, the allegation that "[plaintiff] overcharged for its services, either by intentionally over billing or by performing its services in an inefficient way, leading to excessive charges" is unique to defendants' breach of contract claim and, if true, directly violates a provision of said contract. While the counterclaim is pled in fairly generic terms, it puts plaintiff on notice as to what it must defend, and plausibly states a claim for which relief can be granted.

### B. Professional Negligence/Legal Malpractice

"[E]ach of the following elements must be met to establish a legal malpractice/professional negligence: (1) the employment of an attorney; (2) the attorney's neglect of a professional obligation; and (3) resultant loss. *Edelstein*, 2011 WL 721490, at *6. Under the Rules of Professional Conduct, a lawyer has the obligation to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation". Del. Prof. Cond. R. 1.4(b) Furthermore, "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous." *Id.* at 3.1. "To prove the third element, the damages element, the plaintiff in a legal malpractice action must demonstrate that, 'but for his lawyer's negligence, [he] would

have been successful' in the underlying action." *HeathTrio v. Margules*, Civ. No. 06C-04-196 , 2007 WL 544156, at *9 (Del. Super. Ct. Jan. 16, 2007) (citations omitted).

In the case at bar, there is no dispute that plaintiff was employed by defendants. Nor does plaintiff dispute in this proceeding that it failed in its duty to review defendants' claims, and advise defendants on the viability of said claims. Instead, plaintiff argues that it is not the proximate cause of defendants' losses in the underlying action, as defendants' appeal was denied after retaining new counsel, the litigation strategy was created by Yocca and, had plaintiff declined representation, defendants "would have found some other Delaware counsel to do so." (D.I. 18 at 13)

The court declines to interpret the law so narrowly. Plaintiff had an independent duty to advise defendants of the variability of their claims and litigation strategy. Defendants pled (and plaintiff does not deny in its brief) that plaintiff failed to perform said duty. While plaintiff's failure to perform its duty did not cause defendants to lose in the various CNS litigations, plaintiff's failure did plausibly cause defendants to spend hundreds of thousands of dollars in unnecessary legal fees. It cannot be the law that a attorney is insulated from a malpractice lawsuit when it takes on a client, fails to advise it of the viability of its claims, and then allows the client to spend large sums of money tilting at windmills. Although the attorney's negligence does not change the outcome of the underlying case, it is the proximate cause of substantial pecuniary damages to the client, and forms a basis for a malpractice claim.

### C. Fiduciary Duty

The typical relationships that carry fiduciary duties are trusts, corporations, partnerships, and estates. There are narrow circumstances where an attorney takes on fiduciary duties, "such as in the case of client trust accounts or when an attorney is acting in a second capacity like a trustee or corporate manager. . . ." Indeed, attorneys are colloquially referred to as "fiduciaries," but an attorney must act in some capacity beyond the mere provision of legal services to owe actionable fiduciary duties.

*Rich Realty, Inc. v. Potter Anderson & Corroon LLP*, Civ. No. 09C-12-273, 2011 WL 743400, at *3 (Del. Super. Feb. 21, 2011) (citations omitted). *See also Gelof v. Prickett, Jones & Elliot, P.A.*, Civ. No. 4930, 2010 WL 759663, at *3 (Del. Ch. Feb., 19, 2010); *Sokol Holdings, Inc. v. Dorsey & Whitney, LLP*, Civ. No. 3874, 2009 WL 2501542, at *4 (Del. Ch. Aug. 5, 2009)

Defendants make no assertion that plaintiff mishandled client trust accounts or acted in a second capacity as a trustee or corporate manager. They only allege that plaintiff failed to analyze their claims and properly advise them of their chance of success. (D.I. 16 at 16) This is a claim of professional malpractice, not a breach of fiduciary duty. Therefore, defendants' counterclaim for breach of fiduciary duty is dismissed for failure to state a claim.

### V. CONCLUSION

For the reasons stated above, plaintiff's motion to dismiss defendants' counterclaims is granted in part and denied in part. An appropriate order shall issue.